**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

KIA STAFFORD,

                Plaintiff,

vs.                                                  Case No. 3:13-cv-253-J-JRK

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.
_____/

## **OPINION AND ORDER**[1]

### **I. Status**

Kia Stafford ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff alleges disability based upon the mental impairments of schizoaffective disorder, depressed type; bipolar disorder; depression; and anxiety. Transcript of Administrative Proceedings (Doc. No. 13; "Tr." or "administrative transcript"), filed May 21, 2013, at 205.[2] On June 30, 2010 and February 1, 2010, Plaintiff filed applications for DIB and SSI, respectively. Tr. at 169-70 (DIB), 165-68 (SSI). In the DIB application, Plaintiff alleged an onset date of disability of January 22, 2007; in the SSI application, Plaintiff alleged an onset date of disability of December 31, 2007. Tr. at 169

---

    [1]     The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 16), filed May 28, 2013; Reference Order (Doc. No. 17), entered June 3, 2013.

    [2]     Plaintiff also initially mentioned back pain as contributing to her alleged disability, Tr. at 205, but she at some point abandoned reliance on any physical impairments and elected to focus on her mental impairments, Tr. at 38.

(DIB), 165 (SSI).  During the administrative proceedings, Plaintiff apparently decided to proceed with the alleged onset date of December 31, 2007.  See Tr. at 15 (ALJ's Decision indicating alleged onset date of December 31, 2007).  Plaintiff's applications were denied initially, see Tr. at 91-92, 104-07, and were denied upon reconsideration, see Tr. at 93-94, 108-10, 115-18, 119-20.

On February 16, 2011, an Administrative Law Judge ("ALJ") held a hearing at which Plaintiff and a vocational expert ("VE") testified.  Tr. at 29-90.  At the time of the hearing, Plaintiff was thirty-five (35) years old.  Tr. at 42.  The ALJ issued a Decision on April 13, 2011, finding Plaintiff not disabled through the date of the Decision.  Tr. at 13-23.  On December 12, 2012, the Appeals Council denied Plaintiff's request for review, Tr. at 2-4, thereby making the ALJ's Decision the final decision of the Commissioner.  On March 6, 2013, Plaintiff commenced this action under 42 U.S.C.§§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff on appeal alleges one error by the ALJ.  See Plaintiff's Memorandum in Support of Complaint (Doc. No. 19; "Pl.'s Mem."), filed July 9, 2013.  Plaintiff argues that the ALJ erred by discounting the opinion of Plaintiff's treating psychiatrist, Stephanie Sims, M.D. ("Dr. Sims").  Pl.'s Mem. at 5-10.  On September 25, 2013, Defendant filed a memorandum responding to Plaintiff's argument.  See Memorandum in Support of the Commissioner's Decision (Doc. No. 22; "Def.'s Mem."). After a thorough review of the entire record and consideration of the parties' respective memoranda, the Commissioner's final decision is due to be affirmed for the reasons explained herein.

## **II.  The ALJ's Decision**

When determining whether an individual is disabled,[3] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform PRW; and (5) retains the ability to perform any work in the national economy.  20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry.  See Tr. at 15-22.  At step one, the ALJ observed that Plaintiff "has not engaged in substantial gainful activity since December 31, 2007, the alleged onset date." Tr. at 15 (emphasis and citation omitted).  At step two, the ALJ found Plaintiff suffers from "the following severe impairments: bipolar disorder, schizoaffective disorder and depression." Tr. at 15 (emphasis and citation omitted). At step three, the ALJ ascertained Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 15 (emphasis and citation omitted). The ALJ determined Plaintiff has the following RFC:

---

[3]   "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

-3-

> [Plaintiff can] perform a full range of work at all exertional levels but with the following non-exertional limitations: She is able to perform simple, routine, repetitive tasks; and can concentrate and persist for two hour segments. She is limited to work that requires frequent interaction with crowds, public, and co-workers. [Plaintiff] is unable to meet fast paced, high production demands.

Tr. at 16. At step four, the ALJ found Plaintiff "is unable to perform any past relevant work" as "a cleaner," "a collection clerk," "a customer service representative," and "a bank teller[.]" Tr. at 21. At step five, after considering Plaintiff's age as of the alleged onset date (thirty-two years old), education (high school), work experience, and RFC, the ALJ found "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," including "office helper," "mail sorter," "warehouse checker," and "surveillance systems monitor[.]" Tr. at 21-22. The ALJ concluded that Plaintiff "has not been under a disability . . . from December 31, 2007[, the alleged onset date], through the date of th[e D]ecision." Tr. at 22 (emphasis and citation omitted).

## III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting

Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

Plaintiff contends the ALJ erred in assigning little weight to the opinion of treating psychiatrist Dr. Sims regarding the effects of Plaintiff's mental impairments on her ability to work. Pl.'s Mem. at 5-10. According to Plaintiff, the reasons set forth for discounting the opinion are insufficient. Id. Defendant, on the other hand, contends the ALJ's reasons are sufficient and supported by substantial evidence. Def.'s Mem. at 5-8.

Dr. Sims is one of several medical professionals who treated Plaintiff at Shands Jacksonville for her mental impairments. See Tr. at 403-09. Plaintiff began treatment at Shands on April 5, 2010, but she did not begin seeing Dr. Sims until August 9, 2010. Tr. at 491. Dr. Sims's treatment notes reflect Plaintiff was diagnosed with bipolar 2 disorder, and she was prescribed various medications for the disorder. Tr. at 403-09.

On January 28, 2011, Dr. Sims filled out a questionnaire, Tr. at 491-94, in which she gave the following opinions relating to Plaintiff's mental impairments and their effect on her

ability to work. Plaintiff suffers from "[d]epressive syndrome characterized by . . . [a]nhedomia or pervasive loss of interest in almost all activities[; a]ppetite disturbance with change in weight[; s]leep disturbance[; d]ecreased energy[; f]eelings of guilt or worthlessness[; d]ifficulty concentrating or thinking[; and t]houghts of suicide." Tr. at 492. She also suffers from "[b]ipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes[.]" Tr. at 492. Plaintiff has "[m]arked restriction in activities of daily living"; "[m]arked difficulties in maintaining social functioning"; "[m]arked difficulties in maintaining concentration, persistence, or pace"; and she has had "[r]epeated episodes of decompensation, each of extended duration." Tr. at 492.

In terms of how Plaintiff's mental impairments affect her ability to perform work, Dr. Sims opined Plaintiff has "substantial loss" in the area of "[m]aking simple work-related decisions"; and "extreme loss" in the areas of "[r]esponding appropriately to usual work situations"; "[d]ealing with changes in a routine work setting"; "[r]esponding appropriately to supervisors"; and "[r]esponding appropriately to co-workers." Tr. at 494. Finally, Dr. Sims opined Plaintiff would be absent from work more than four days per month, and she is not "capable of sustaining competitive . . . work on a regular and continuing basis[.]" Tr. at 494.

The Regulations instruct ALJs how to appropriately weigh a treating psychiatrist's[4] opinion.[5] See 20 C.F.R. § 404.1527(d). Because treating psychiatrists "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating psychiatrist's opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2). When a treating psychiatrist's opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering factors such as the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the psychiatrist. 20 C.F.R. § 404.1527(c).

If an ALJ concludes the opinion of a treating psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating psychiatrist's own records. Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937

---

[4] A treating psychiatrist is a psychiatrist who provides treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by evidence showing that the claimant sees or has seen the psychiatrist with a frequency consistent with accepted practice for the type of treatment and/or evaluation required for the condition. See 20 C.F.R. § 404.1502.

[5] Treating sources' opinions are statements from treating physicians, treating psychologists, and the like that reflect judgments about the nature and severity of the claimant's impairment, including symptoms, diagnosis, prognosis, what the claimant can still do despite the impairment, and physical or mental restrictions. 20 C.F.R. § 404.1527(a)(2); 20 C.F.R. § 404.1513(a).

F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence). The ALJ must "state with particularity the weight he [or she] gave the different . . . opinions and the reasons therefor." Sharfarz v. Bowen, 825 F.2d 278, 279-80 (11th Cir. 1987); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005) (finding no reversible error when "the ALJ articulated specific reasons for failing to give [a treating physician] controlling weight," and those reasons were supported by substantial evidence); Lewis, 125 F.3d at 1440.

Here, after summarizing the medical evidence and Dr. Sims's opinion on the questionnaire, the ALJ assigned "little weight" to the opinion. Tr. at 17-20. The ALJ provided the following reasons for discounting the opinion:

> . . . Dr. Sims has a six-month treatment history with [Plaintiff]; however, her opinion is not supported by her own treatment notes and it is inconsistent with the evidence of record when considered in its entirety. . . . Dr. Sims'[s] opinion is contradicted by statements and testimony from [Plaintiff] regarding activities of daily living as well as other records in the file including a report from Vocational Rehabilitation. Furthermore, Dr. Sims has only assigned [Plaintiff] GAFs[6] of 55 and 75. . . .

Tr. at 19 (citations omitted). Later in the Decision, the ALJ discussed Plaintiff's activities of daily living and elaborated on how Dr. Sims's opinion is inconsistent with Plaintiff's activities of daily living:

> [Plaintiff] has described daily activities, which are not as limited to the extent one would expect, given the complaints of disabling symptoms and limitations. At one point or another in the record (either in forms completed in connection

---

[6] The Global Assessment of Functioning ("GAF") Scale describes an individual's overall psychological, social, and occupational functioning as a result of mental illness, without including any impaired functioning due to physical or environmental limitations. Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994) at 32.

-8-

> with the application and appeal, in medical reports or records, or in [Plaintiff's] testimony), [Plaintiff] has reported the following daily activities: cooking; doing laundry and housework; shopping at the mall; driving to the store and appointments; traveling (South Carolina, Tennessee, Daytona Beach, and Gainesville); taking online classes where she studies 10-15 hours per week (got a[n] A in Chemistry and B in Macro-Economics), which are difficult courses and shows a good capability to concentrate; socializing with friends and relatives, including helping a friend who was a quadriplegic; going to the movies, restaurants, and church; playing computer games and surfing the internet; playing with her two dogs; applying for work online; checking her email; and taking care of personal needs independently.
>
> [Dr. Sims's opinion[7]] is rejected because it is flatly contradicted by [Plaintiff's] report of activities and capabilities. These capabilities are demonstrated by the vocational report, wherein [Plaintiff] was able to stay on task without breaks for 3 hours to complete an assessment. Furthermore, [Plaintiff's] ability to concentrate on her college courses, consisting of difficult subjects as Chemistry and Macroeconomics, shows substantial capabilities and further undermines [Dr. Sims's opinion].

Tr. at 20 (citations omitted).

The ALJ's reasons for discounting Dr. Sims's opinion amount to the requisite "good cause" and are supported by substantial evidence in the record.[8] First, the ALJ's finding that Dr. Sims's opinions are not supported by the treatment notes, Tr. at 19, is accurate and supported by substantial evidence, given the GAF scores assigned throughout the treatment

---

[7] The ALJ's Decision actually refers to the opinion as "[t]he opinion at Exhibit 14F[.]" Tr. at 20. The only opinion located at Exhibit 14F is Dr. Sims's opinion. See Tr. at 491-94.

[8] To the extent Plaintiff argues that one of the reasons the ALJ offered to discount the opinion is an impermissible reason, Plaintiff misinterprets the ALJ's Decision. Plaintiff contends that the ALJ "reasoned that Dr. Sims had only a six-month treatment history with . . . Plaintiff" as part of the discounting of the opinion. Pl.'s Mem. at 6. The ALJ did not rely on the fact that Plaintiff had a six-month treatment history in discounting the opinion; rather, the ALJ "note[d] that Dr. Sims has a six-month treatment history with [Plaintiff]" but found that despite the treatment period, the opinion should be discounted for the reasons previously discussed. Tr. at 19. Contrary to Plaintiff's contention, it appears the ALJ viewed the six-month treatment period as a positive factor rather than relying on it to discount the opinion. In any event, under the Regulations, an ALJ is permitted to consider the nature and extent of the treatment relationship when determining the proper weight to assign a medical opinion. See 20 C.F.R. § 404.1527(c).

period and given that the treatment was generally conservative in nature, see Tr. at 403-09. Second, the ALJ correctly observed that Dr. Sims's opinion is contrary to the findings included in a June 1, 2010 Vocational Evaluation Report. See Tr. at 19 (ALJ's observation); Tr. at 300-07 (Vocational Report).  As recognized by the ALJ, Tr. at 20, the Vocational Report indicates that Plaintiff was able to endure a three hour evaluation with no breaks, Tr. at 302.  The ALJ comprehensively summarized the Vocational Report, Tr. at 18, including that "[d]uring the evaluation, [Plaintiff] demonstrated the ability to stay on task with minimal instructions or supervision, she was not easily distracted despite typical distractions of people talking, walking by, and phone ringing."  Tr. at 18; see Tr. at 302.  The ALJ also noted that Plaintiff "worked at a moderate pace, and was able to follow written and oral instructions."  Tr. at 18; see Tr. at 302.  Third, the ALJ correctly observed that Plaintiff's statements and testimony about her daily activities erode the reliability of Dr. Sims's opinion. Tr. at 19-20; see, e.g., Tr. at 44-47, 60-65 (Plaintiff testifying about her class work), 69-70 (Plaintiff testifying about traveling and helping her quadriplegic friend), 54-58 (Plaintiff testifying about daily activities), 254 (form filled out by Plaintiff discussing socializing with friends).

For all of the foregoing reasons, the undersigned finds no error in the ALJ's election to assign Dr. Sims's opinion little weight.

## V. Conclusion

After a thorough review of the entire record, the undersigned finds that the ALJ's Decision is supported by substantial evidence.  Accordingly, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) and pursuant to § 1383(c)(3) **AFFIRMING** the Commissioner's final decision.

2. The Clerk of Court is further directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on October 29, 2013.

_____
JAMES R. KLINDT
United States Magistrate Judge

kaw

Copies to:

Counsel of Record